Michael J. Teter (16734)
Margaret B. Vu (15277)
**TETER & VU, LLC**
57 West 200 South, Suite 250
Salt Lake City, UT 84111
Telephone: (801) 810-0365
michael@tetervu.com
margaret@tetervu.com
*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MATTHEW MONAHAN<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DEVON MEYER, in his individual capacity, TYLER OLIVA, in his individual capacity, COLBY BENTLEY, in his individual capacity, JOEL MORGAN, in his individual capacity, SALT LAKE CITY POLICE DEPARTMENT, and SALT LAKE CITY CORPORATION,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>**Civil No.**<br><br>**JURY TRIAL DEMANDED** |

　　　　Plaintiff Matthew Monahan ("Matthew") hereby alleges and complains against Devon Meyer, Tyler Oliva, Colby Bentley, Joel Morgan, Salt Lake City Police Department, and Salt Lake City Corporation, as follows:

## NATURE OF THE CASE AND PARTIES

1. This is a civil action for damages and other relief against Defendants pursuant to 42 U.S.C. § 1983 for violating Matthew's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. Matthew is a resident of Salt Lake City, Utah.

3. Salt Lake City Corporation ("Salt Lake City") is a municipality incorporated under the laws of the State of Utah and is responsible for the maintaining, controlling, and supervising the Salt Lake City Police Department and for establishing the policies, procedures and customs by which its employees conduct their official duties.

4. The Salt Lake City Police Department ("SLCPD") is a governmental entity under the supervision and control of Salt Lake City.

5. Officer Devon Meyer is a police officer duly appointed and employed by the SLCPD and was at all relevant times acting in the course and scope of his employment and acting under color of state law. Officer Meyer is being sued in his individual capacity.

6. Officer Tyler Oliva is a police officer duly appointed and employed by the SLCPD and was at all relevant times acting in the course and scope of his employment and acting under color of state law. Officer Oliva is being sued in his individual capacity.

7. Officer Colby Bentley is a police officer duly appointed and employed by the SLCPD and was at all relevant times acting in the course and scope of his employment and acting under color of state law. Officer Bentley is being sued in his individual capacity.

8. Officer Joel Morgan is a police officer duly appointed and employed by the SLCPD and was at all relevant times acting in the course and scope of his employment and acting under color of state law. Officer Morgan is being sued in his individual capacity.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and (c). The parties reside in this judicial district and the events giving rise to the claims asserted herein occurred here as well.

## FACTUAL ALLEGATIONS

11. On May 25, 2020, Minneapolis Police Department officers murdered George Floyd, a Black man suspected of no more than using a counterfeit $20 bill.

12. That killing sparked nationwide protests and movements for dramatic change to police practices.

13. On May 30, 2020, thousands of protestors peacefully gathered in Salt Lake City. A handful of protestors engaged in vandalism and destroyed property and police arrested a few dozen protestors, nearly all of them for failing to disperse after ordered to do so.

14. Following the protests, Salt Lake City Police Chief Mike Brown stated, "I honestly believe there were people from out of state who were here to instigate violence."

15. Protestors took to Salt Lake City's streets again in July to rally against the death of Bernardo Palacios-Carbajal and the decision by Salt Lake County District Attorney Sim Gill not to charge the officers involved in the incident.

16. During a protest on July 9, 2020, several individuals allegedly vandalized the Salt Lake County District Attorney's Office building.

17. Several protestors have been charged in connection with that vandalism.

18. One of them is Marvin Oliveros, whose van the SLCPD seized and held as evidence following the July 9 protests.

19. On or about July 21, 2020, the SLCPD informed Oliveros that he could come claim his van at the SLCPD property release building located at 4710 West 1525 South, Salt Lake City.

20. On July 21, 2020, Oliveros went to the address provided by the SLCPD to claim his van.

21. Matthew is Oliveros's friend and provided him a ride to the police building. Two friends accompanied them. Matthew wore shorts and sandals.

22. When the group arrived at the address, they drove up to the front door, rang a buzzer, and spoke to an officer over a microphone who told them that they did not keep vehicles at that location. The officer asked them to wait.

23. The group went across the street and sat on the grass.

24. A few minutes later, multiple officers approached.

25. Officer Meyer stated to Matthew, "Matthew, can you come talk to me for a second?" Matthew said, "No, I don't talk to police."

26. Officer Meyer told Matthew that he would be detained. Officer Meyer instructed Matthew to place his hands behind his back. Matthew asked if he could put his mask on and the officer refused to let him.

27. Officer Meyer placed Matthew in handcuffs.

28. Officer Meyer walked Matthew to a police car.

29. Officer Meyer patted Matthew down. He was assisted by Officer Tyler Oliva.

30. Officer Meyer searched Matthew by going through his pockets.

31. Officer Meyer took Matthew's wallet out of his pocket and then proceeded to go through the wallet.

32. Officer Meyer looked through the credit cards in Matthew's wallet, asking him about them. At one point, the officer said, "I've just got to make sure that there's nothing in here that doesn't belong to you."

33. During this entire time, Officer Tyler Oliva watched and assisted.

34. When Officer Meyer went through Matthew's wallet, he found a credit card that belonged to one of Matthew's friends at the scene. Officer Meyer walked over and gave the card to the friend.

35. Officer Meyer then placed Matthew in the back of a police car and closed the door. The windows were not open. According to the officer, the air conditioning did not reach the backseat because of the bullet proof glass that separated the front from back seats.

36. It was approximately 3:40 p.m. when the officer placed Matthew in the back of the police car. According to weather records, it was 95 degrees Fahrenheit at that location at that time.

37. Only after several minutes did the officer return and lower the backseat windows. Even then, he only lowered them by an inch on each side.

38. The excessive temperature in the backseat of the police car posed a safety risk to Matthew.

39. At the scene and assisting with these actions were Officers Colby Bentley and Joel Morgan. These officers remained at the scene and participated in the encounter.

40. Matthew remained in the backseat of the car for approximately fifteen minutes. At no point during that time did any SLCPD officer explain why they had detained Matthew.

41. The officers eventually released Matthew. When they did so, one of the officers stated, "We had to ID you. We had to detain you to ID you, to know who you are. Just be aware that

there is going to be an investigation into the events that happened on May 30. That's why you were placed in handcuffs today. Do you understand that?"

42.     Once Matthew stated he understood, Officers Meyer, Bentley, Morgan, and Oliva allowed him to leave.

43.     During the entire time that Matthew was detained, he was deeply concerned about his physical safety and well-being, especially given the heat in the backseat and because the officers had provided no explanation for their actions.

**FIRST CAUSE OF ACTION**
**(42 U.S.C. § 1983 Claim Against Individual Defendants for Unlawful Arrest or Detention)**

44.     Matthew realleges the allegations contained in the preceding paragraphs.

45.     The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests.

46.     An investigative detention occurs when an officer stops and briefly detains a person for investigative purposes.

47.     An arrest is an involuntary, highly intrusive encounter. The use of handcuffs or other forceful techniques are evidence of an arrest, not just an investigative detention.

48.     Officers Meyer and Oliva physically arrested Matthew, assisted by Officers Bentley and Morgan.

49.     A warrantless arrest is permitted under the U.S. Constitution when an officer has probable cause to believe that a person committed a crime.

50.     "Probable cause exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004).

51.     Officers Meyer and Oliva lacked any probable cause to believe that Matthew committed a crime. Indeed, they ended the encounter by stating that they had detained Matthew to determine who he was. Officers Bentley and Morgan knew that no probable cause existed.

52.     Further, even if the July 21, 2020 encounter does not constitute an arrest, it would then be an unlawful detention.

53.     An officer may only conduct an investigative detention if the officer has a "reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).

54.     Officers Meyer and Oliva lacked any reasonable suspicion supported by articulable facts that Matthew was engaged in any criminal activity, as evidenced by the statement that they detained Matthew to determine who he was, not based on any suspicion about criminal activity. Officers Bentley and Morgan knew that no reasonable suspicion existed.

55.     Therefore, as detailed more fully above, Officers Meyer, Oliva, Bentley, and Morgan, while acting individually or jointly, and acting under color of law and within the scope of their employment, deprived Matthew of his constitutional right against unlawful arrest under the Fourth Amendment incorporated against the States through the Fourteenth Amendment of the U.S. Constitution.

56.     As a result of this violation of his constitutional rights, Matthew suffered damages, including, but not limited to, special damages as well as general damages for pain and suffering.

## SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 Claim Against Individual Defendants for Excessive Force)

57.     Matthew realleges the allegations contained in the preceding paragraphs.

58. Officers Meyer, Oliva, Bentley, and Morgan deprived Matthew of his constitutional right against excessive force during the course of an arrest under the Fourth Amendment incorporated against the States through the Fourteenth Amendment of the U.S. Constitution.

59. Courts analyze excessive force claims under the Fourth Amendment's objectively reasonable standard based on the facts and circumstances.

60. The Supreme Court has held that unnecessary exposure to the heat of the sun can violate the Eighth Amendment's "unnecessary and wanton infliction of pain" standard. Accordingly, such actions can violate the Fourth Amendment, which requires a lesser showing of objective unreasonableness.

61. To evaluate reasonableness, courts consider: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Weigel v. Broad*, 544 F.3d 1143, 1151–52 (10th Cir. 2008).

62. When officers approached Matthew, he stood when they told him to. He placed his hands behind his back when they told him to. He explained everything that was in his pockets, including his wallet, cigarillos, a GoPro, a GoPro battery, and car keys.

63. When Officer Meyer told Matthew to widen his stance for a pat down, Matthew complied. Officers Oliva, Bentley, and Morgan saw Matthew comply.

64. Matthew posed no threat to any member of the public or to any officer's safety, nor did he in any way resist.

65. According to officers, Matthew was detained so that they could identify him.

66. Multiple officers were at the location. There was no reasonable basis or need for Officers Meyer and Oliva to place Matthew in the back of an unventilated police car in 95-degree heat to "identify him."

67. This is especially true since when he approached Matthew, Officer Meyer called him by his name. Also, prior to placing Matthew in the police car, he had already gone through Matthew's wallet.

68. Further, when Officer Meyer went through Matthew's wallet, he identified a card that belonged to one of Matthew's friends who accompanied him. Officer Meyer then walked over and returned the card to Matthew's friend. This demonstrates the officers sufficiently knew Matthew's identity to know what credit cards did or did not belong to Matthew.

69. Put simply, no reason existed to place Matthew into a police car, a car in which the officers acknowledged the air conditioning did not reach the back.

70. Officers Meyer, Oliva, Bentley, and Morgan violated Matthew's constitutional rights under the Fourth Amendment against excessive force.

71. As a result of this violation of his constitutional rights, Matthew suffered damages, including, but not limited to, special damages as well as general damages for pain and suffering.

### THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 Claim Against Individual Defendants for First Amendment Violations)

72. Matthew realleges the allegations contained in the preceding paragraphs.

73. The First Amendment prohibits state actors from taking retaliatory actions against an individual for engaging in protected speech.

74. The Supreme Court recognizes the First Amendment right to petition "as one of the most precious of the liberties safeguarded by the Bill of Rights." *Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945 (2018).

75. In addition, "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. State of Ala. ex. rel. Patterson*, 357 U.S. 449, 460 (1958).

76. Matthew exercised his First Amendment right to peacefully assemble, associate, and protest on May 30, 2020. He did not engage in vandalism. He did not engage in any destructive act.

77. For exercising these rights, Officers Meyer, Oliva, Bentley, and Morgan subjected Matthew to unlawful arrest on July 21, 2020.

78. The officers lacked any probable cause for arresting Matthew.

79. The officers lacked any reasonable suspicion supported by articulable facts to detain Matthew.

80. Instead, because Matthew was a recent protestor and was associating with protestors who had been charged, the officers detained and arrested him.

81. But for Matthew exercising these fundamental First Amendment rights, the officers would not have subjected Matthew to detainment and arrest.

82. The officers' unconstitutional motives were made clear when, upon releasing Matthew, they stated, "Just be aware that there is going to be an investigation into the events that happened on May 30. That's why you were placed in handcuffs today. Do you understand that?"

83. Officers Meyer, Oliva, Bentley, and Morgan violated Matthew's constitutional rights under the First Amendment by subjecting him to retaliatory actions for engaging in protected speech.

84. As a result of this violation of his constitutional rights, Matthew suffered damages, including, but not limited to, special damages as well as general damages for pain and suffering.

85. Moreover, because of the motives underlying the officers' actions, and their efforts to punish past speech and chill future speech, punitive damages are warranted.

## FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983 Claim Against Defendants Salt Lake City and SLCPD)

86. Matthew realleges the allegations contained in the preceding paragraphs.

87. In the events described above, Officers Meyer, Oliva, Bentley, and Morgan acted pursuant to, and consistent with, their training by Salt Lake City and SLCPD.

88. In the events described above, Officers Meyer, Oliva, Bentley, and Morgan acted pursuant to, and consistent with, established policies of Salt Lake City and SLCPD.

89. In the events described above, Officers Meyer, Oliva, Bentley, and Morgan acted pursuant to, and consistent with, established practices and customs of Salt Lake City and SLCPD.

90. Salt Lake City and SLCPD demonstrated deliberate indifference toward the proper training, equipping, and supervision of its employees and agents.

91. The actions by Salt Lake City and SLCPD were a proximate cause of damages sustained by Matthew.

## PRAYER FOR RELIEF

WHEREFORE, Matthew prays for judgment against Defendants as follows:

1. For damages suffered as a result of the actions of Defendants as set forth above;
2. For punitive damages against Defendants for the actions set forth above;
3. For the costs and attorney fees incurred herein; and
4. For such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED this 12th day of November, 2020.

                                                   TETER & VU

                                                   /s/ Michael J. Teter
                                                 Michael J. Teter
                                                 *Attorney for Matthew Monahan*